UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEATHER ROBINSON,                          Case  No. 08-14069

              Plaintiff,

vs.                                        Lawrence P. Zatkoff
                                           United States District Judge

PATRICIA CARUSO, et al.,                   Michael Hluchaniuk
                                           United States Magistrate Judge

              Defendants.
_____/

**REPORT AND RECOMMENDATION**
**MOTION TO DISMISS (Dkt. 27)**

## I.    PROCEDURAL HISTORY

Plaintiff, an inmate currently at the Huron Valley Correctional Facility,

brings this action under 42 U.S.C. § 1983,[1] claiming a violation of her rights under

the United States Constitution.  (Dkt. 1).  In her complaint, filed on September 22,

2008, plaintiff claims that she received inadequate medical and dental care.  *Id*.

_____

[1] This Report and Recommendation contains hyperlinks to statutory and
case law references, for the ease of the parties and others viewing this document
electronically.  This is not intended to be an endorsement of any product, service,
or company.  The Court accepts no responsibility for, and does not endorse, any
product, organization, or content at any hyperlinked site, or at any site to which
that site might be linked.  The Court accepts no responsibility for the availability
or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or
directs the user to some other site does not affect the opinion of the Court.

Defendants Correctional Medical Services (CMS) and Dr. Craig Hutchinson,[2] the director of CMS (collectively, the CMS defendants), filed a motion to dismiss on January 2, 2009. (Dkt. 27). Plaintiff filed a response on February 5, 2009. (Dkt. 46). The CMS defendants filed a reply on February 24, 2009. (Dkt. 48). On May 26, 2009, this case was referred to the undersigned for all pretrial purposes by District Judge Lawrence P. Zatkoff. (Dkt. 60).

The motion to dismiss is now ready for report and recommendation. For the reasons set forth below, the undersigned **RECOMMENDS** that the CMS defendants' motion to dismiss be **DENIED**.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Complaint

In her complaint, plaintiff alleges that CMS is under contract with the State of Michigan to provide all medical and dental services to Michigan inmates, including at the facility where plaintiff is housed. (Dkt. 1, ¶ 14). Plaintiff further alleges that CMS is required to comply with all MDOC policy directives regarding the delivery of health care services. (Dkt. 1, ¶ 14). Plaintiff alleges that defendant Hutchinson is the Director of CMS and is responsible for the overall operation of

---

[2] Plaintiff sues Dr. Hutchinson in both his individual and official capacities. (Dkt. 1, p. 6).

CMS, including medical staff at MDOC facilities.  (Dkt. 1, ¶ 15).  Plaintiff alleges that various other defendants are or were CMS employees, including some "unknown" nurses.  (Dkt. 1, ¶¶ 17-22).

Plaintiff claims that Huron Valley Complex, the correctional facility at which she was housed during the events in question houses approximately 900 women, but has only one dentist.  (Dkt. 1, ¶ 25).  Plaintiff has a history of enamel erosion from untreated acid reflux and insufficient dental products and accessories available in prison.  (Dkt. 1, ¶ 26).  Plaintiff began sending health care requests (kites) in April 2005 on a monthly basis regarding her dental problems, including pain and extreme sensitivity, a missing filling, a cavity, bleeding gums, enamel erosion, exposed nerves, and difficulty eating.  (Dkt. 1, ¶ 27).  Plaintiff says that no appointment was forthcoming.  Because "dental" continued to deny treatment, she began requesting off-site dental services at her own expense.  (Dkt. 1, ¶ 28).  These kites went unanswered, save one.  (Dkt. 1, ¶ 29).

Plaintiff filed a grievance on April 16, 2006 against "Dental and Administration," stating that she was being denied dental services in the facility and dental services by an off-site provider.  (Dkt. 1, ¶ 30).  According to plaintiff's complaint, Step I of this grievance was not answered.  She filed a Step II appeal on October 1, 2005 to the warden.  She was interviewed by Dr. Schmude (also a

defendant).  (Dkt. 1, ¶¶ 31-32).  Dr. Schmude agreed that her teeth needed to be fixed, but said that the MDOC will not pay for root canals.  Rather, the MDOC only offers extraction and plaintiff would have to see an off-site provider at her own expense if she wanted anything other than extraction.  (Dkt. 1, ¶ 32).  She asked to be referred to a specialist and to have the process expedited.  According to plaintiff, that did not happen.  Plaintiff alleges that Policy Directive 04.06.150 provides that "Endodontic services, including root canal therapy and periapical surgery" are in fact provided by the MDOC, but she was not offered any such services.  (Dkt. 1, ¶ 33).

On October 25, 2006, plaintiff received a response to her Step II grievance, stating that access to outside dental care is not coordinated by MDOC dental staff and directed plaintiff to contact her Resident Unit Manager (RUM) for this request.  (Dkt. 1, ¶ 34).  Plaintiff states that her RUM said that coordinating off-site medical appointments was not in her job description and that plaintiff should kite the warden.  (Dkt. 1, ¶ 35).  Plaintiff filed her Step III grievance appeal on November 2, 2006 and has not received any response.  (Dkt. 1, ¶ 36).  Plaintiff alleges, on information and belief, that an off-site dental provider and his assistant, made dozens of calls to "Administration and Dental" attempting to schedule the

necessary appointments, but received no communication from "Administration" and reluctant cooperation from defendant Dr. Gloria Smith.  (Dkt. 1, ¶ 39).

Plaintiff alleges that her pain and suffering and her dental conditions worsened in 2007 and despite many kites to "Dental" and "Health Care," and her father's attempts to communicate with the facility's administration and the MDOC in Lansing, no treatment or relief was provided.  (Dkt. 1, ¶¶ 41-44).  In May-June, 2007, plaintiff was told that health care had not had a dentist in over five months, but the dentist from the nearby men's facility would "try to come by when he had a chance."  (Dkt. 1, ¶ 45).  On June 1, 2007, plaintiff went to health care for emergency treatment.  She was given antibiotics.  The next day, plaintiff's face was severely swollen, she had a prune-sized abscess, her upper lip was so swollen she could not close her mouth or eat or drink, and another abscess had formed on the roof of her mouth.  (Dkt. 1, ¶ 47).  Plaintiff returned to health care that day and had apparently been given antibiotics to which she was allergic.  (Dkt. 1, ¶ 48). She was given different antibiotics along with pain medications.  (Dkt. 1, ¶ 48). Her face continued to swell, but health care refused to see her.  (Dkt. 1, ¶ 49-54).

Plaintiff went for her medication refill and told the nurse that the current treatment was not working and that the routine protocol for complicated abscesses was IV antibiotics, incision and drainage, and removal of the dead and diseased

tissue.  (Dkt. 1, ¶ 55).  According to plaintiff, the nurse said that there was nothing he could do, no Medical Services Provider was available in the clinic, and she would have to wait.  (Dkt. 1, ¶ 56).  Overnight, the abscess blister quadrupled in size and the infection had spread, distorting the left side of plaintiff's face in size and shape.  The blister across her face was blocking the air passage through her nose and her hard palate had a cherry-sized blister.  (Dkt. 1, ¶ 56).  Plaintiff returned to health care and was sent to the hospital.  (Dkt. 1, ¶ 57).  Plaintiff claims that the hospital refused to treat her for "liability" reasons and she was returned to the facility, with a referral for follow-up care with an oral surgeon and antibiotics and pain medication.  (Dkt. 1, ¶¶ 58-60).

Apparently, in June and August 2007, plaintiff underwent two oral surgeries for her conditions, but alleges that because various medical staff failed to follow the post-operative instructions, her abscesses returned.  (Dkt. 1, ¶¶ 64-66). Plaintiff alleges that she wrote to Dr. Hutchinson on August 20, 2007, detailing the ongoing problems and asking him to step in as the director of CMS.  (Dkt. 1, ¶ 67).  She explained that she had already filed her grievance, but wanted Dr. Hutchinson to ensure that the care she received was in accordance with standard dental protocol and policy.  In response, plaintiff received an unsigned form letter,

which did not address her concerns, but instructed her to utilize the grievance procedure.  (Dkt. 1, ¶ 68).

Plaintiff asserts that she underwent unnecessary pain and suffering for over two years and continues to have problems to this day.  (Dkt. 1, ¶¶ 69-70).  Plaintiff also alleges that her off-site provider has recommended further surgery and other treatments and products that defendants have refused to provide.  (Dkt. 1, ¶ 71). In counts II and V of her complaint, plaintiff alleges that the CMS defendants violated her constitutional rights under the Fourteenth and Eighth Amendments by denying her adequate medical care and, specifically, that Dr. Hutchinson refused to protect plaintiff after being specifically informed in writing of her serious medical needs.  (Dkt. 1, ¶ 76a).   In Count IV of the complaint, plaintiff alleges that the CMS defendants, by allowing and encouraging the illegal acts of denying medical care as set forth in the MDOC policy directives, created a "custom" of denying such care.  (Dkt. 1, ¶ 78).  Plaintiff asks for money damages and injunctive relief.  (Dkt. 1, pp. 30-32).

   B.   Parties' Arguments

The CMS defendants assert that plaintiff incorrectly alleges in her complaint that numerous defendants were or are employees of CMS.  According to the CMS defendants, the only individual plaintiff correctly identified as a CMS employee in

7

her complaint is Dr. Craig Hutchinson, M.D.  Thus, the motion to dismiss only relates to Dr. Hutchinson and CMS.

The CMS defendants argue that plaintiff failed to exhaust her administrative remedies as to CMS or Dr. Hutchinson.  The CMS defendants argue that plaintiff did not exhaust her grievance because she did not follow paragraph T of the Policy Directive, which requires a grievant to identify the "[d]ates, times, places, and names of all those involved in the issue being grieved."  Defendants provide copies of the grievances that plaintiff filed during the relevant time period.

According to the CMS defendants, Grievance No. WHV-2007-06-00837-12a1, dated June 11, 2007, grieved "CMS dental staff" and "MDOC's administrative staff" and only defendants, Warden Davis, administrative assistant Whalen, and deputy warden Bruce were named in the grievance, none of whom are CMS employees.  Defendants acknowledge that the grievance concerned dental care requests and alleged problems with an infected abscess in plaintiff's upper gum and the roof of her mouth, and was appealed through Step III.  Defendants argue, however, that because none of the specific people identified in the grievance are "CMS dental staff," that this grievance was not exhausted as to either CMS or Dr. Hutchinson.

Report and Recommendation
Motion to Dismiss
*Robinson v. Caruso*; 08-14069

Grievance No. WHV-2007-06-00838-12e1, dated June 8, 2007, grieved NP

Lange, for her treatment of plaintiff on June 4, 2007.  However, NP Lange

is not a defendant in this case.  Plaintiff's Step III grievance was dismissed for

failure to file within 10 days of receiving the Step II response and the grievance

appeal was rejected as untimely filed.  Thus, defendants argue that this grievance

is unrelated to CMS or Dr. Hutchinson.  Further, defendants assert that while

Grievance No. WHV-2007-06-00838-12e1 grieved "CMS dental staff" and

MDOC's administrative staff, only defendants, Sgt. Houpt, Lt. Allen, RN Bielak,

RN Ward and PA Kulkarni were named in the grievance, none of whom are CMS

employees.  Plaintiff's Step III grievance appeal was dismissed for failure to file

within 10 days of receiving the Step II response and the grievance appeal was

rejected as untimely filed.

Grievance No. WHV-2008-08-1567-09z, dated September 26, 2008, grieved

Huron Valley Complex-Women Food Services' alleged failure to meet MDOC

guidelines and claimed that proper food portions were not being served.

According to defendants, neither CMS nor Dr. Craig Hutchinson have any

involvement with Food Services or control over food preparation and service at

the Huron Valley Complex.  This grievance was appealed through Step III.

The CMS defendants also argue that plaintiff's complaint fails to state a claim of deliberate indifference against Dr. Hutchinson in his individual capacity because it fails to establish that he engaged in any conduct that was deliberately indifferent to any alleged serious medical need.  Further, plaintiff's complaint fails to allege the requisite culpable state of mind for a deliberate indifference claim and plaintiff's claims simply amount to a difference of opinion in a medical judgment.

The CMS defendants also argue that plaintiff fails to state a claim against CMS or against Dr. Hutchinson in his official because no policy, pattern or practice is alleged to have violated plaintiff's constitutional rights.  Simply, according to defendants, plaintiff does not identify any policy, custom, or practice in her complaint.  And, plaintiff makes no allegations that any policy, pattern, or custom caused her injury.  Thus, this claim must fail, according to defendants.  Defendants also assert that a generic "money saving" policy is insufficient to sustain a deliberate indifference claim.

In response, plaintiff asserts that the CMS defendants violated her constitutional rights because of understaffing, inadequate care, and denial of treatment, which led to her suffering deliberate indifference.  Plaintiff also states that she alleged that the "dental staff" and "medical" staff at the correctional

facility were employed by CMS, but that she could be mistaken, given that this information is not readily available to prisoners.  Plaintiff asserts that her complaint is, essentially, that CMS failed to submit requests for endodontic services (i.e., root canal therapy).  Plaintiff argues that because she named CMS dental staff and CMS services in two of her Step I grievances, and Dr. Hutchinson is employed by CMS, then she exhausted her administrative remedies as to both defendants.

Plaintiff also argues that she has sufficiently stated a deliberate indifference claim.  She claims that Dr. Hutchinson was responsible for employing a dentist at the correctional facility and failed to do so for approximately six months.  Plaintiff also alleges that, in addition to abandoning the specific duties of his position, defendant Hutchinson knowingly acquiesced in the unconstitutional conduct of others, with knowledge of the substantial risk of harm.  As to CMS, plaintiff argues that her mistreatment was the result of a policy or practice of CMS. Plaintiff argues that the correct inquiry is whether CMS had knowledge of a substantial risk of harm - not whether it was known who the particular victim might be.  That is, CMS should have known that emergencies would occur and that its failure to have an on-site dentist available for six months posed a substantial risk of harm to inmates.  Plaintiff alleged in her complaint that CMS's

"policies and protocols have insufficient checks on its doctors by which a patient is left without care for an unreasonable amount of time" and it is "institutionally responsible for such delays." Plaintiff further pleaded that it was a custom to deny root canal therapy and to delay dental treatments at the correctional facility where she was housed.

## III.   DISCUSSION

### A.   Standards of Review

#### 1.   Motion to dismiss

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964 (2007), quoting, *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

The Supreme Court recently raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 (1957), that had prevailed for the last few decades. *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 2009 WL 2497928, *2 (6th Cir. 2009), citing, *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009); *see also Twombly*, 550

U.S. at 555.  In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. The Sixth Circuit observed that this new standard is designed to screen out cases that, while not utterly impossible, are "implausible."  *Courie*, at *2. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  And although the Court must accept all well-pleaded factual allegations in the complaint as true, it need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555, quoting, *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Iqbal*, 129 S.Ct. at 1949.  The Sixth Circuit noted that "[e]xactly how implausible is 'implausible' remains to be seen, as such a malleable standard will have to be worked out in practice." *Courie*, *2.

 Where a plaintiff is proceeding without the assistance of counsel, the court is still required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney.  *See e.g. Simmons v. Caruso*, 2009 WL 2922046 (E.D. Mich. 2009), citing, *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).

Thus, the Court must still read plaintiff's *pro se* complaint indulgently and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson v. Pardus*, 127 S.Ct. at 2200 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se* complaint at issue.).

        2.     Summary judgment

Rule 12(d) also provides that, if the moving party presents and the Court relies on matters *outside* the pleadings, "the motion [under Rule 12(b)(6)] must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). Thus, the plain language of the rule requires that if the motion relies on outside materials that the Court considers, then the motion "must" be converted into a motion for summary judgment pursuant to Rule 56. *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993).

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the evidence and all reasonable inferences must be construed in favor of the nonmoving party. *Tanner*

*v. County of Lenawee*, 452 F.3d 472, 477 (6th Cir. 2006). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (citation omitted). Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded."

*Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *Id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-226 (6th Cir. 1994). Thus, "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Id.*, quoting, *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks omitted).

    B.    <u>Exhaustion</u>

        1.     Burden of proof

In *Jones v. Bock*, 549 U.S. 199, 216 (2007), the United States Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." The Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. *Id.* at 218. Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id.* Accordingly, exhaustion is satisfied if plaintiff

complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

      2.      Purpose of exhaustion requirement.

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 126 (2006), quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90. The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 93, quoting, *Porter v. Nussle,* 534 U.S. 516, 525 (2002) (alteration omitted). Exhaustion serves a dual purpose: it gives prisoners "an

effective incentive to make full use of the prison grievance process and

accordingly provides prisons with a fair opportunity to correct their own errors."

*Id*. at 94.  Additionally, the exhaustion requirement "has the potential to reduce the

number of inmate suits, and also to improve the quality of suits that are filed by

producing a useful administrative record." *Jones*, 549 U.S. at 204.

Before *Jones* invalidated the additional exhaustion procedures placed on

prisoner civil rights suits by the Sixth Circuit, a prisoner was required to "file a

grievance against the person he ultimately seeks to sue," and exhaust the claim as

to each defendant associated with the claim. *Curry v. Scott*, 249 F.3d 493, 505

(6th Cir. 2001).  The critical holding in *Jones* was that the PLRA does not impose

additional exhaustion procedures or requirements outside the prison's grievance

procedures.[3]  As observed in Jones, the primary purpose of a grievance is to alert

---

[3] In its discussion of the former MDOC policy, which did not require prisoners to name particular persons in a grievance, the Supreme Court noted that "the MDOC grievance form does not require a prisoner to identify a particular responsible party, and the respondent is not necessarily the allegedly culpable prison official, but rather an administrative official designated in the policy to respond to particular types of grievances at different levels." *Jones*, 549 U.S. at 218.  While the updated grievance procedure is applicable in this case, the MDOC grievance form has not been updated since *Jones*.  Unless a prisoner reviews the grievance procedure, which is noted to be available in the prison library, there is nothing on the grievance form to alert a prisoner of the requirement to name all those "involved" in the circumstances of his grievance.  (*See* Dkt. 27, Ex. C).

prison officials of a particular problem, "not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Jones*, 549 U.S. 219, quoting, *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004); *see also*, *Bell v. Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) ("[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint."). As such, "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances." *Jones*, 549 U.S. at 219. No one in the present case claims that they did not receive "fair notice" of plaintiff's alleged mistreatment.

> 3. Defendants have not met their burden of proving that plaintiff failed to exhaust his administrative remedies.

The 2000 MDOC Policy Directive at issue in *Jones v. Bock* does not contain the requirements that a grievance "shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what when, where, why, how)" and that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included." After *Jones*, despite the requirement of the updated MDOC policy directive to name those involved in the issue being grieved, in many

circumstances, a prisoner's failure to specifically name individuals who are later

named in a lawsuit will not be deemed a failure to exhaust.  For example, in *Grear*

*v. Gelabert*, 2008 WL 474098, *7-8 (W.D. Mich. 2008), the prisoner named

"health care staff" in a grievance.  Prison officials did not, however, reject the

grievance for failure to identify the specific persons about whom he was

complaining.  *Id*. at 8.  The court concluded that, because prison officials did not

rely on this default by rejecting the grievance, the claim was exhausted as to *all*

health care staff, including those named in the lawsuit.  *Id.*

In this case, plaintiff identified, in Step I of grievance

WHV07060083712A1 dated June 11, 2007, "CMS dental staff," "MDOC

administrative staff," and "CMS Services."  (Dkt. 27-5, pp. 4, 7, 8).  She also

wrote:

> During the "5 months prior to the situation, Women's
> Huron Valley was without a full-time dentist which
> contributed to my inability to be seen timely.  To date
> I'm still experiencing complications due to the
> negligence, deliberate indifference, interdepartmental
> communication, laziness and blatant lack of care of the
> MDOC administration and CMS services.  This is the
> second time I've been made to suffer abscesses and
> extensive complications, showing this is a pattern, the
> routine way of conducting business, consistent and
> ongoing breakdown within this facility and not a freak
> accident.

(Dkt. 27-5, p. 8).

Just as in *Grear*, plaintiff's Step I grievance was not rejected as unduly vague or for a failure to identify specific individual dental and medical personnel and the respondent addressed the grievance on the merits.  *See also Contor v. Caruso*, 2008 WL 878665, *8 (W.D. Mich. 2008) (Prison officials cannot rely on the procedural rule barring review of a grievance where the grievance was not rejected at any step of the process for failure to identify specific CMS personnel).

Nothing in *Jones v. Bock* or *Woodford* altered the well-established principle that when merits of a grievance are addressed, any claimed procedural defect not raised during the administrative process is waived and cannot form the basis of a failure to exhaust defense.  District Judge Paul Maloney recently examined the application of *Jones* and *Woodford* in circumstances where the updated MDOC policy directive governed and the inmate failed to identify all persons later sued in the underlying grievance.  *Baker v. Vanderark*, 2007 WL 3244075 (W.D. Mich. 2007).  In *Baker*, the defendants argued that the plaintiff failed to exhaust his administrative remedies with respect to certain individuals who were not named in his grievance, but who were later named in his lawsuit.  *Id.* at *6.  Judge Maloney distilled the defendants' argument as follows:  "In effect, Defendants argue this Court may conclude a grievant did not exhaust his or her administrative remedies

Report and Recommendation
Motion to Dismiss
*Robinson v. Caruso*; 08-14069

even if the MDOC addressed the issue on the merits." *Id*.  Judge Maloney rejected

this argument and concluded that it was inconsistent with the policies

underpinning *Woodford*.  Under the PLRA and *Woodford*, "both parties are

obligated to raise objections in the administrative proceedings in order for the

issue to be properly before a reviewing court." *Id*. at *7.  If the Court accepted

defendants' position, a prisoner would never have notice that his grievance did not

comply with the grievance procedure.  Further, accepting defendants' position

would place the burden of raising an objection only on a prisoner and not on the

persons administering the grievance process.  This interpretation is inconsistent

with the exhaustion doctrine and the purpose of the PLRA:  "[w]hen prison

officials fail to raise procedural problems during the grievance process, too many

suits make it to federal courts on a record where the procedural problem has not

been adequately developed." *Id*. at *7.

Judge Maloney also concluded that a "fair interpretation of PD 03.02.103

gives the Grievance Coordinator discretion to accept or reject a grievance that fails

to identify specific defendants on the basis of the grievance being vague." *Id*.

Rather than dismissing the grievance on a procedural issue and allowing the

prisoner to address any procedural concerns, the defendants opted to address the

grievance on the merits. *Id*. at *7.  And, if needed additional information was

required, the policy provides that the interview is the time to gather that information.  Judge Maloney concluded that "[b]y accepting the grievance, investigating the claim, and responding on the merits all the way through Step III of the procedure, [the defendants] cannot now raise a procedural problem for the first time in this Court."  *Id.*

Other courts, including this district, have reached the conclusion that *Woodford* is not controlling because it did not involve a situation where a grievance was addressed on the merits.  *See e.g.*, *Broder v. Correctional Medical Services, Inc.*, 2008 WL 704229, *2 (E.D. Mich 2008) ("Where the prison officials themselves overlook a prisoner's failure to comply with procedural requirements and address the prisoner's grievance on the merits, the procedural default rule established by *Woodford* is inapplicable."); *see also* *Johnson v. Beardslee*, 2007 WL 2302378 (W.D. Mich. 2007) (finding exhaustion satisfied because MDOC accepted the grievance and addressed it on the merits rather than rejecting it or denying it as untimely); *Ellis v. Vadlamudi*, 568 F.Supp.2d 778, 785 (E.D. Mich. 2008) (Exhaustion held sufficient where on-going medical care complaint at issue and grievance addressed on merits).  As set forth in the grievance procedure, a grievance may be rejected if it is too vague (which includes the failure to name all persons involved).  Since the grievance at issue (WHV07060083712A1) was not

rejected, and it was addressed on the merits, any procedural defect as to the lack of specific identities of the "CMS dental staff" or the "CMS Services" personnel was waived. Thus, there is no basis to grant summary judgment in favor of the CMS defendants based on a failure to exhaust administrative remedies as to grievance WHV07060083712A1.

In the view of the undersigned, the CMS defendants improperly filed a motion to dismiss on the basis of exhaustion, which should have been filed as motion for summary judgment. As plaintiff pointed out, only allegations in the complaint may be considered for purposes of a motion to dismiss, but the CMS defendants attached various grievance materials to their motion, which fall outside the four corners of plaintiff's complaint. As set forth above, with respect to plaintiffs grievance WHV07060083712A1, the undersigned suggests that the CMS defendants failed to meet their burden of proving that plaintiff did not exhaust her administrative remedies and because the undersigned considered materials outside the complaint, this aspect of defendants' motion is considered a motion for summary judgment. With respect to plaintiff's grievances WHV0706008391E4 and WHV07060083812E1, which were rejected at Step III as untimely, the undersigned suggests that plaintiff has had no opportunity to rebut defendants' evidence in this regard, which is solely the MDOC rejections. For

example, plaintiff may have admissible evidence to dispute the untimeliness of her

Step III appeals or offer evidence that any delay falls within one of the excuses set

forth in the MDOC policy directive.  Further, whether defendants' evidence is

admissible, in its current form, in the summary judgment context is in serious

doubt.  *See e.g.*, *Moore*, 2 F.3d at 699 (In resolving a Rule 56 motion, the Court

should not consider unsworn or uncertified documents.). Under these

circumstances, the undersigned declines to convert defendants' motion as one for

summary judgment and finds no basis in plaintiff's complaint to dismiss her

claims (grounded in the latter two grievances) based on an alleged failure to

exhaust.  Questions relating to whether defendant Hutchinson was responsible for

plaintiff's care at any time and whether the other two grievances were exhausted

could be the subject of a separate motion after discovery or additional presentation

of admissible evidence on this issue.

    C.   <u>Deliberate Indifference</u>

       The Supreme Court has recognized the responsibility of the courts "to

scrutinize claims of cruel and unusual confinement." *Rhodes v. Chapman*, 452

*U.S.* 337, 352 (1981).  Included as a type of conduct that violates the Eighth

Amendment is a prison official's deliberate indifference to a prisoner's serious

medical needs.  *See e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake v. Lucas*,

2:08-cv-14069-LPZ-MJH   Doc # 90   Filed 09/25/09   Pg 26 of 34   Pg ID 793

537 F.2d 857, 860 (6th Cir. 1976). To succeed on a claim of deliberate

indifference, plaintiff must satisfy two elements, an objective one and a subjective

one. He must show that he had a serious medical need and he must show that a

defendant, being aware of that need, acted with deliberate indifference to it.

*Wilson v. Seiter*, 501 U.S. 294, 300 (1991).

A medical need is "serious" if it has been diagnosed by a physician as

requiring treatment or is so obvious that a lay person would easily recognize the

necessity for a doctor's attention. *Monmouth County Correctional Inst. Inmates v.*

*Lanzaro*, 834 F.2d 326, 347 (3d Cir.), cert. denied, 486 U.S. 1006 (1988). An

Eighth Amendment claim may be premised on deliberate indifference to exposing

an inmate to an unreasonable risk of serious harm in the future. *Dodson v.*

*Wilkinson*, 304 Fed.Appx. 434, 2008 WL 5378017, *3 (6th Cir. 2008), citing,

*Helling v. McKinney*, 509 U.S. 25, 36 (1993). A delay in access to medical

attention, however, can violate the Eighth Amendment when it is "tantamount to

'unnecessary and wanton infliction of pain.'" *Hill v. DeKalb Regional Youth*

*Detention Center*, 40 F.3d 1176, 1187 (11th Cir. 1994), (citations omitted),

overruled on other grounds, *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Further, a

claim of inadequate medical treatment may state a constitutional claim if the

Report and Recommendation
Motion to Dismiss
*Robinson v. Caruso*; 08-14069

26

treatment rendered is "so woefully inadequate as to amount to no treatment at all."

*Westlake v. Lucas*, 537 F.2d 857, 860-861 (6th Cir. 1976).

A serious medical need generally falls into one of two categories (1) a medical need diagnosed by a physician as requiring treatment; or (2) a medical need that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.  *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.), cert. denied, 486 U.S. 1006 (1988).  For purposes of their motion to dismiss, the CMS defendants do not appear to dispute that plaintiff had a serious medical need.

Rather, the CMS defendants assert that plaintiff has failed to state a claim as to the second element of *Wilson*, which requires sufficient factual allegations stating a claim that these particular defendants acted with deliberate indifference. "Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent in the form of "malicious" or "sadistic" action.  *Farmer v. Brennan*, 511 U.S. 825, 861 (1994); *see also Estelle*, 429 U.S. at 105-106 (a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment; "medical malpractice does not become a constitutional

violation merely because the victim is a prisoner"); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("[o]bduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference.").

As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Id.* at 106.  An allegation of mere negligence in diagnosis or treatment is not actionable under § 1983.  *Estelle v. Gamble, supra*; *Byrd v. Wilson*, 701 F.2d, 592, 595 n. 2 (6th Cir. 1983).  In *Whitley v. Albers*, 475 U.S. 312 (1986), the Court held that "[i]t is obduracy and wantonness, not inadvertence or error in good faith" that violates the Eighth Amendment in "supplying medical needs."  "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established."  *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992).  The deliberate indifference standard requires knowledge of the particular medical condition in order to establish an intent, ("a sufficiently culpable state of mind," *Wilson*, 501 U.S. at 298), to deny or to delay purposely "access to medical care" or

intentionally to interfere "with the treatment once prescribed," *Estelle*, 429 U.S. at 104-05. Thus, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn ex rel. Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.), cert. denied, 513 U.S. 873 (1994).

A claim under § 1983 alleging deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment may be brought against a prison official for his or her personal role in implementing or enforcing a policy in a way that deprives an individual of his constitutional rights. *Estate of Young v. Martin*, 70 Fed.Appx. 256, 260 n. 3 (6th Cir. 2003), citing, *Taylor v. Michigan Department of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995); *Hill v. Marshall*, 962 F.2d 1209 (6th Cir. 1992). Such claims are appropriate where individual officials are charged with "abandoning the specific duties of [their] position[s] ... in the face of actual knowledge of a breakdown in the proper workings" of their respective departments or facilities. *Martin*, 70 Fed.Appx. at 260, quoting, *Hill*, 962 F.2d at 1213. "As opposed to holding the officials vicariously liable for the misconduct of others, plaintiffs may hold these officials liable for their failures in their own obligations with regard to developing and implementing policy and custom in such a way that resulted in violations of their Eighth Amendment

rights." *Id.*  Indeed, "supervisors may be held liable if *they fail to take corrective action*, turn a blind-eye to a constitutional violation, or condone a policy and/or practice that amounts to a constitutional violation." *Harman v. Bell*, 2008 WL 606998, *2 (E.D. Ark. 2008)* (emphasis added), citing, *Ambrose v. Young*, 474 F.3d 1070, 1079 (8th Cir. 2007); *Johnson v. Blaukat*, 453 F.3d 1108 (8th Cir. 2006); *Brown v. Missouri Dep't of Corr.*, 353 F.3d 1038, 1040 (8th Cir. 2004).

In evaluating plaintiff's complaint for purposes of a motion to dismiss, it is important to emphasize that she need not *prove* her claims at this stage, but rather, her complaint, viewed indulgently, need only have enough factual matter (taken as true) to suggest the required element.  Plaintiff alleges that she wrote to Dr. Hutchinson on August 20, 2007, detailing the ongoing problems and asking him to step in as the director of CMS.  (Dkt. 1, ¶ 67).  She explained that she had already filed her grievance, but wanted Dr. Hutchinson to ensure that the care she received was in accordance with standard dental protocol and policy.  In response, plaintiff received an unsigned form letter, which did not address her concerns, but instructed her to utilize the grievance procedure.  (Dkt. 1, ¶ 68).  As to plaintiff's claims against Dr. Hutchinson in his personal capacity, the undersigned suggests that plaintiff has sufficiently stated a claim that Dr. Hutchinson abandoned the

duties of his position or turned a blind-eye to a policy that created the claimed constitutional violation.

As to plaintiff's claims against CMS and Dr. Hutchinson in his official capacity, the CMS defendants correctly point out that a plaintiff bringing an action pursuant to § 1983 may not base liability on a theory of *respondeat superior* or vicarious liability. *Moore v. Michigan Dep't of Corrections*, 2007 WL 3124649, *4 (W.D. Mich. 2007), citing, *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 98 (1978). Rather, under *Monell*, liability can only be found in situations where a deprivation of constitutional rights occurs as a result of an entity's policy, custom, or practice. *Raub v. Correctional Medical Services*, 2008 WL 160611, *2 (E.D. Mich. 2008), citing, *Monell*, 436 U.S. at 694. Moreover, there must be an "affirmative link between the policy and the particular constitutional violation alleged." *Raub*, at *2, quoting, *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). "There must be more than merely a right to control employees, as plaintiff must show that CMS at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending employees." *Moore*, at *4, citing, *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, plaintiff alleges that MDOC Policy Directive 04.06.150 provides that "Endodontic services, including root canal therapy and periapical surgery" are in

Report and Recommendation
Motion to Dismiss
*Robinson v. Caruso*; 08-14069

fact provided by the MDOC, but she was not offered any such services, and was told that such services were not available. (Dkt. 1, ¶ 33). In count IV of the complaint, plaintiff alleges that the CMS defendants, by allowing and encouraging the illegal acts of denying medical care as set forth in the MDOC policy directives, created a "custom" of denying such care. (Dkt. 1, ¶ 78). The undersigned suggests that these allegations, along with the plaintiff's detailed description of her attempts to obtain dental services over a two-year period, sufficiently state a claim under *Monell* against CMS and Dr. Hutchinson in his official capacity to suggest that there was a pattern, practice or policy of denying adequate dental care or denying dental care that was specifically authorized by an MDOC policy directive.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned suggests that the CMS defendants' motion to dismiss be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d

505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: September 25, 2009                         s/Michael Hluchaniuk
                                                  Michael Hluchaniuk
                                                  United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>September 25, 2009</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Randall A. Juip, Michael R. Dean, Brian J. Richtarcik, and Ronald E. Wagner</u>, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participant: <u>Heather Robinson, # 309247, HURON VALLEY COMPLEX - WOMEN'S, 3511 Bemis Road, Ypsilanti, MI 48197</u>.

s/James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov

Report and Recommendation
Motion to Dismiss
*Robinson v. Caruso*; 08-14069
