UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEATHER ROBINSON,                          Case  No. 08-14069

        Plaintiff,                 Lawrence P. Zatkoff
vs.                                        United States District Judge

PATRICIA CARUSO, et al.,                   Michael Hluchaniuk
                                           United States Magistrate Judge

        Defendants.
_____/

## REPORT AND RECOMMENDATION
## MOTIONS FOR SUMMARY JUDGMENT (Dkt. 53, 54)

## I.     PROCEDURAL HISTORY

Plaintiff, an inmate currently at the Huron Valley Correctional Facility,

brings this action under 42 U.S.C. § 1983, claiming a violation of her rights under

the United States Constitution.  (Dkt. 1).  In her complaint, filed on September 22,

2008, plaintiff claims that she received inadequate medical and dental care.  *Id*.  On

May 26, 2009, this case was referred to the undersigned for all pretrial purposes by

District Judge Lawrence P. Zatkoff.  (Dkt. 60). The MDOC defendants filed a

motion for summary judgment on April 9, 2009.  (Dkt. 53).  Plaintiff filed a

response on July 22, 2009.  (Dkt. 81).  The MDOC defendants[1] filed a reply on

---

[1] The moving defendants employed by the MDOC are Patricia Caruso,
George Pramsteller, MD, Charles Schmude, MD, Gloria Smith, MD, Susan Davis,
Olivia Bruce, Karen Whalen, J. Allen, J. Houpt, Ethridge, and Osbourne.
Defendants Z. Campbell, PA Kulkarni, and Nurse Bielak have not yet been served.

July 30, 2009.  (Dkt. 83).  Defendants Nicholas Faison and St. Joseph Mercy

Hospital (the Hospital defendants) filed a motion for summary judgment on July

22, 2009.  (Dkt. 54).  Plaintiff filed a response on August 12, 2009.  (Dkt. 85).  The

Hospital defendants filed a reply on August 27, 2009.  (Dkt. 89).  These matters are

now ready for report and recommendation

     For the reasons set forth below, the undersigned **RECOMMENDS** that

defendants' motions for summary judgment be **GRANTED**.

## II.    STATEMENT OF FACTS

    A.    <u>Plaintiff's Complaint</u>

    In her complaint, plaintiff alleges that CMS[2] is under contract with the State

of Michigan to provide all medical and dental services to Michigan inmates,

including at the facility where plaintiff is housed.  (Dkt. 1, ¶ 14).  Plaintiff further

alleges that CMS is required to comply with all MDOC policy directives regarding

the delivery of health care services.  (Dkt. 1, ¶ 14).  Plaintiff alleges that defendant

Hutchinson is the Director of CMS and is responsible for the overall operation of

CMS, including medical staff at MDOC facilities.  (Dkt. 1, ¶ 15).  Plaintiff alleges

---

Counsel for defendant Bonita Davis-Neigbors filed an appearance on February 24,
2010.

    [2] The CMS defendants recently filed a motion for summary judgment, which
is not the subject of this Report and Recommendation.  (Dkt. 97).

that various other defendants are or were CMS employees, including some "unknown" nurses. (Dkt. 1, ¶¶ 17-22).

Plaintiff claims that Huron Valley Complex, the correctional facility at which she was housed during the events in question houses approximately 900 women, but has only one dentist. (Dkt. 1, ¶ 25). Plaintiff has a history of enamel erosion from untreated acid reflux and insufficient dental products and accessories available in prison. (Dkt. 1, ¶ 26). Plaintiff began sending health care requests (kites) in April 2005 on a monthly basis regarding her dental problems, including pain and extreme sensitivity, a missing filling, a cavity, bleeding gums, enamel erosion, exposed nerves, and difficulty eating. (Dkt. 1, ¶ 27). Plaintiff says that no appointment was forthcoming. Because "dental" continued to deny treatment, she began requesting off-site dental services at her own expense. (Dkt. 1, ¶ 28). These kites went unanswered, save one. (Dkt. 1, ¶ 29).

Plaintiff filed a grievance on April 16, 2006 against "Dental and Administration," stating that she was being denied dental services in the facility and dental services by an off-site provider. (Dkt. 1, ¶ 30). According to plaintiff's complaint, Step I of this grievance was not answered. She filed a Step II appeal on October 1, 2005 to the warden. She was interviewed by Dr. Schmude (also a defendant). (Dkt. 1, ¶¶ 31-32). Dr. Schmude agreed that her teeth needed to be fixed, but said that the MDOC will not pay for root canals. Rather, the MDOC

only offers extraction and plaintiff would have to see an off-site provider at her own expense if she wanted anything other than extraction. (Dkt. 1, ¶ 32). She asked to be referred to a specialist and to have the process expedited. According to plaintiff, that did not happen. Plaintiff alleges that Policy Directive 04.06.150 provides that "Endodontic services, including root canal therapy and periapical surgery" are in fact provided by the MDOC, but she was not offered any such services. (Dkt. 1, ¶ 33).

On October 25, 2006, plaintiff received a response to her Step II grievance, stating that access to outside dental care is not coordinated by MDOC dental staff and directed plaintiff to contact her Resident Unit Manager (RUM) for this request. (Dkt. 1, ¶ 34). Plaintiff states that her RUM said that coordinating off-site medical appointments was not in her job description and that plaintiff should kite the warden. (Dkt. 1, ¶ 35). Plaintiff filed her Step III grievance appeal on November 2, 2006 and has not received any response. (Dkt. 1, ¶ 36). Plaintiff alleges, on information and belief, that an off-site dental provider and his assistant, made dozens of calls to "Administration and Dental" attempting to schedule the necessary appointments, but received no communication from "Administration" and reluctant cooperation from defendant Dr. Gloria Smith. (Dkt. 1, ¶ 39).

Plaintiff alleges that her pain and suffering and her dental conditions worsened in 2007 and despite many kites to "Dental" and "Health Care," and her

father's attempts to communicate with the facility's administration and the MDOC in Lansing, no treatment or relief was provided. (Dkt. 1, ¶¶ 41-44). In May-June, 2007, plaintiff was told that health care had not had a dentist in over five months, but the dentist from the nearby men's facility would "try to come by when he had a chance." (Dkt. 1, ¶ 45). On June 1, 2007, plaintiff went to health care for emergency treatment. She was given antibiotics. The next day, plaintiff's face was severely swollen, she had a prune-sized abscess, her upper lip was so swollen she could not close her mouth or eat or drink, and another abscess had formed on the roof of her mouth. (Dkt. 1, ¶ 47). Plaintiff returned to health care that day and had apparently been given antibiotics to which she was allergic. (Dkt. 1, ¶ 48). She was given different antibiotics along with pain medications. (Dkt. 1, ¶ 48). Her face continued to swell, but health care refused to see her. (Dkt. 1, ¶ 49-54).

Plaintiff went for her medication refill and told the nurse that the current treatment was not working and that the routine protocol for complicated abscesses was IV antibiotics, incision and drainage, and removal of the dead and diseased tissue. (Dkt. 1, ¶ 55). According to plaintiff, the nurse said that there was nothing he could do, no Medical Services Provider was available in the clinic, and she would have to wait. (Dkt. 1, ¶ 56). Overnight, the abscess blister quadrupled in size and the infection had spread, distorting the left side of plaintiff's face in size and shape. The blister across her face was blocking the air passage through her

nose and her hard palate had a cherry-sized blister. (Dkt. 1, ¶ 56). Plaintiff returned to health care and was sent to the hospital. (Dkt. 1, ¶ 57). Plaintiff claims that the hospital refused to treat her for "liability" reasons and she was returned to the facility, with a referral for follow-up care with an oral surgeon and antibiotics and pain medication. (Dkt. 1, ¶¶ 58-60).

Apparently, in June and August 2007, plaintiff underwent two oral surgeries for her conditions, but alleges that because various medical staff failed to follow the post-operative instructions, her abscesses returned. (Dkt. 1, ¶¶ 64-66). Plaintiff alleges that she wrote to Dr. Hutchinson on August 20, 2007, detailing the ongoing problems and asking him to step in as the director of CMS. (Dkt. 1, ¶ 67). She explained that she had already filed her grievance, but wanted Dr. Hutchinson to ensure that the care she received was in accordance with standard dental protocol and policy. In response, plaintiff received an unsigned form letter, which did not address her concerns, but instructed her to utilize the grievance procedure. (Dkt. 1, ¶ 68).

Plaintiff asserts that she underwent unnecessary pain and suffering for over two years and continues to have problems to this day. (Dkt. 1, ¶¶ 69-70). Plaintiff also alleges that her off-site provider has recommended further surgery and other treatments and products that defendants have refused to provide. (Dkt. 1, ¶ 71). In counts II and V of her complaint, plaintiff alleges that the CMS defendants violated

her constitutional rights under the Fourteenth and Eighth Amendments by denying her adequate medical care and, specifically, that Dr. Hutchinson refused to protect plaintiff after being specifically informed in writing of her serious medical needs. (Dkt. 1, ¶ 76a). In Count IV of the complaint, plaintiff alleges that the CMS defendants, by allowing and encouraging the illegal acts of denying medical care as set forth in the MDOC policy directives, created a "custom" of denying such care. (Dkt. 1, ¶ 78). Plaintiff asks for money damages and injunctive relief. (Dkt. 1, pp. 30-32).

     B.    <u>Plaintiff's Grievances</u>

Plaintiff submitted Grievance No. WHV-2007-06-00837-12a1 on June 11, 2007, grieved "CMS dental staff," "MDOC's administrative staff," and defendants, Warden Davis, administrative assistant Whalen, and deputy warden Bruce. The grievance concerned dental care requests and alleged problems with an infected abscess in plaintiff's upper gum and the roof of her mouth, and was appealed through Step III.

Grievance No. WHV-2007-06-00839-12e4, dated June 11, 2007, grieved NP Lange,[3] for her treatment of plaintiff on June 4, 2007. Plaintiff's Step III grievance was dismissed for failure to file within 10 days of receiving the Step II response and the grievance appeal was rejected as untimely filed.

_____

[3] NP Lange is not a defendant in this case.

On June 8, 2007, plaintiff submitted Grievance WHV-2007-06-00838-12e1 against "CMS dental staff," MDOC's administrative staff, Sgt. Houpt, Lt. Allen, RN Bielak, RN Ward, and PA Kulkarni. In this grievance, plaintiff claimed that MDOC custody staff and CMS staff refused to assist with an emergency medical crisis. The Step I respondent wrote that plaintiff's chart had been reviewed, she was seen by medical and sent to the hospital and treated; thus, her health care needs were being met. At Step II, the respondent concluded that plaintiff's grievance was duplicative of grievance WHV-2007-06-00839-12e4. The Step III grievance appeal was dismissed for failure to file within 10 days of receiving the Step II response and the grievance appeal was rejected as untimely filed.

Grievance No. WHV-2008-08-1567-09z, dated September 26, 2008, grieved Huron Valley Complex-Women Food Services' alleged failure to meet MDOC guidelines and claimed that proper food portions were not being served. This grievance was appealed through Step III.

## III. DISCUSSION

### A. Standard of Review

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the evidence and all reasonable inferences must be construed in favor of the nonmoving party. *Tanner*

*v. County of Lenawee*, 452 F.3d 472, 477 (6th Cir. 2006). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (citation omitted). Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *Id.*,

unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-226 (6th Cir. 1994).  Thus, "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact."  *Id.*, quoting, *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks omitted).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1774, 1776 (2007).

B.      Color of State Law

To establish a cause of action under § 1983, two essential elements are required: (1) there must be conduct committed by a person acting under color of

state law, and (2) the conduct must deprive the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527 (1981); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Jones v. Duncan*, 840 F.2d 359, 361-62 (6th Cir. 1988). If either element is missing, then a claim under § 1983 fails. *Christy v. Bandlett*, 932 F.2d 502, 504 (6th Cir. 1991). There is no suggestion that the MDOC defendants dispute the first element, color of state law.

The Hospital defendants, on the other hand, argue that plaintiff's claims against them must fail because they did not act "under color of state law" as required by § 1983. (Dkt. 54). According to the Hospital defendants, they were acting at all times a privately-owned corporation and a private citizen when they provided health care services to plaintiff. They offer plaintiff's medical records in support of their argument. In addition, the Chief Division Counsel of St. Joseph Mercy Health system (Salwa Guindi) and defendant Faison attest that they are a private entity and a private citizen, respectively. (Dkt. 54, Exs. D, E). An entity may be sued under § 1983 as one acting "under color of state law," where it contracts with the state to perform a traditional state function such as providing medical services to prison inmates. *West v. Atkins*, 487 U.S. 42, 54 (1988); *see also, Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993). However, the Hospital defendants have shown, via affidavit, that they do not have any such relationship.

Ms. Guindi attests that no contract between the MDOC and St. Joseph Mercy Health System existed in June 2007. (Dkt. 54, Ex. D).

In response, plaintiff alleges that these defendants had a "unique" relationship with the correctional facility, the MDOC, and plaintiff. She explains that, in her view, because as a prisoner, she could not choose her own venue of treatment, St. Joseph, by way of the state agency's decision to bring her there for treatment, became her only means of treatment. And, when they denied her treatment, they were deliberately indifference to her serious medical need. (Dkt. 85). Plaintiff offers no factual or legal support for her argument.

The undersigned suggests that summary judgment should be granted in favor of the Hospital defendants because they did not act under color of state law. Plaintiff has not established that any material question of fact exists on this issue. Given this fatal flaw, plaintiff's § 1983 claim against them cannot go forward.

C.     Deliberate Indifference

        1.     Legal standards

The Supreme Court has recognized the responsibility of the courts "to scrutinize claims of cruel and unusual confinement." *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981). Included as a type of conduct that violates the Eighth Amendment is a prison official's deliberate indifference to a prisoner's serious medical needs. *See e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake v. Lucas*,

537 F.2d 857, 860 (6th Cir. 1976). To succeed on a claim of deliberate

indifference, plaintiff must satisfy two elements, an objective one and a subjective

one. She must show that she had a serious medical need and she must show that a

defendant, being aware of that need, acted with deliberate indifference to it.

*Wilson v. Seiter*, 501 U.S. 294, 300 (1991).

A medical need is "serious" if it has been diagnosed by a physician as

requiring treatment or is so obvious that a lay person would easily recognize the

necessity for a doctor's attention. *Monmouth County Correctional Inst. Inmates v.*

*Lanzaro*, 834 F.2d 326, 347 (3d Cir.), cert. denied, 486 U.S. 1006 (1988). An

Eighth Amendment claim may be premised on deliberate indifference to exposing

an inmate to an unreasonable risk of serious harm in the future. *Dodson v.*

*Wilkinson*, 304 Fed.Appx. 434, 2008 WL 5378017, *3 (6th Cir. 2008), citing,

*Helling v. McKinney*, 509 U.S. 25, 36 (1993). A delay in access to medical

attention, however, can violate the Eighth Amendment when it is "tantamount to

'unnecessary and wanton infliction of pain.'" *Hill v. DeKalb Regional Youth*

*Detention Center*, 40 F.3d 1176, 1187 (11th Cir. 1994), (citations omitted),

overruled on other grounds, *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Further, a

claim of inadequate medical treatment may state a constitutional claim if the

treatment rendered is "so woefully inadequate as to amount to no treatment at all."

*Westlake v. Lucas*, 537 F.2d 857, 860-861 (6th Cir. 1976).

A serious medical need generally falls into one of two categories (1) a medical need diagnosed by a physician as requiring treatment; or (2) a medical need that is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.), cert. denied, 486 U.S. 1006 (1988). As to the latter category, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Dodson*, at *4, quoting, *Napier*, 238 F.3d at 742. As the Sixth Circuit explained in *Blackmore v. Kalamazoo Co.*, 390 F.3d 890, 898 (6th Cir. 2004):

> *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

Thus, plaintiff must show that, with verifying medical evidence, that here treatment was inadequate.

The second element of *Wilson* requires plaintiff to show that defendants acted with deliberate indifference. "Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent

in the form of "malicious" or "sadistic" action. *Farmer v. Brennan*, 511 U.S. 825, 861 (1994); *see also Estelle*, 429 U.S. at 105-106 (a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment; "medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("[o]bduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference.").

As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. An allegation of mere negligence in diagnosis or treatment is not actionable under § 1983. *Estelle v. Gamble, supra*; *Byrd v. Wilson*, 701 F.2d, 592, 595 n. 2 (6th Cir. 1983). In *Whitley v. Albers*, 475 U.S. 312 (1986), the Court held that "[i]t is obduracy and wantonness, not inadvertence or error in good faith" that violates the Eighth Amendment in "supplying medical needs." "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992). The

deliberate indifference standard requires knowledge of the particular medical condition in order to establish an intent, ("a sufficiently culpable state of mind," *Wilson*, 501 U.S. at 298), to deny or to delay purposely "access to medical care" or intentionally to interfere "with the treatment once prescribed," *Estelle*, 429 U.S. at 104-05. Thus, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn ex rel. Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir.), *cert. denied*, 513 U.S. 873 (1994).

A claim under § 1983 alleging deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment may be brought against a prison official for his or her personal role in implementing or enforcing a policy in a way that deprives an individual of his constitutional rights. *Estate of Young v. Martin*, 70 Fed.Appx. 256, 260 n. 3 (6th Cir. 2003), citing, *Taylor v. Michigan Department of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995); *Hill v. Marshall*, 962 F.2d 1209 (6th Cir. 1992). Such claims are appropriate where individual officials are charged with "abandoning the specific duties of [their] position[s] ... in the face of actual knowledge of a breakdown in the proper workings" of their respective departments or facilities. *Martin*, 70 Fed.Appx. at 260, quoting, *Hill*, 962 F.2d at 1213. "As opposed to holding the officials vicariously liable for the misconduct of others, plaintiffs may hold these officials liable for their failures in their own

Report and Recommendation
Motions for Summary Judgment
*Robinson v. Caruso*; 08-14069

obligations with regard to developing and implementing policy and custom in such a way that resulted in violations of their Eighth Amendment rights." *Id*. Indeed, "supervisors may be held liable if *they fail to take corrective action*, turn a blind-eye to a constitutional violation, or condone a policy and/or practice that amounts to a constitutional violation." *Harman v. Bell*, 2008 WL 606998, *2 (E.D. Ark. 2008) (emphasis added), citing, *Ambrose v. Young*, 474 F.3d 1070, 1079 (8th Cir. 2007); *Johnson v. Blaukat*, 453 F.3d 1108 (8th Cir. 2006); *Brown v. Missouri Dep't of Corr.*, 353 F.3d 1038, 1040 (8th Cir. 2004).

      2.     Individual capacity claims.

Plaintiff alleges that delays in receiving medical care subjected her to several reinfection sites, more liver-damaging antibiotics, further loss of bone and unnecessary pain for five months. (Dkt. 81, p. 15, citing Dkt. 1, ¶¶ 65-66). She claims that she was denied care mid-2005 through May 2007. Defendants point out that plaintiff's own exhibits establish that she received multiple visits to dental care during the time period where no full-time dentist was on-site. She had medical exams, prescription medicines, and recommendations for off-site visits. (Dkt. 81, Exs. J and S). Plaintiff was seen by medical professionals on January 16, March 9, March 29, April 5, May 25, June 1, June 4, June 5, and June 7 of 2007; all during the period of time that she alleges she was harmed by the lack of a full time dentist at the facility. (Dkt. 81, Exs. J, S). Dr. Schmude indicated she was

seen daily in first half of June, 2007.  (Dkt. 81-3, p. 17).  She was taken to the St.

Joseph Mercy emergency room on June 3, 2007, where the emergency room

physician determined that her abscess was not yet ready for an incision and

drainage and prescribed several medications and follow up instructions for further

care, contrary to plaintiff's claims that the hospital refused treatment.  (Dkt. 54-5).

Plaintiff was provided with off-site visits on June 14, 2007, and August 16, 2007 to

Dr. Spencer.  (Dkt. 81, Ex. H).

Plaintiff does not provide any verifying medical evidence to establish that

the treatment she received was so woefully inadequate as to violate her Eighth

Amendment rights or that the delay in treatment caused a serious medical injury.

While plaintiff claims that she was denied medical/dental treatment from mid-2005

through 2007, the record evidence shows that she received regular, consistent care

and treatment.  No medical evidence in the record suggests that any alleged delay

in treatment cause plaintiff harm that would not have otherwise occurred, given

plaintiff's chronic dental issues caused by chronic acid reflex.  Plaintiff also does

not provide any evidence to support her claim that Dr. Schmude and Dr. Smith

both told her that the MDOC does not provide root canal services, when in fact,

such services are expressly permitted by MDOC policy.  Nothing in the medical

records shows that anyone advised plaintiff that such services would not be

provided to her by the MDOC; rather, all the records (and affidavits offered by

defendants) merely indicate that plaintiff desired to have her dental work done by her own dentist at her own expense. (Dkt. 81-2, p. 27; 81-2, p. 33; 81-2, p. 40; 81-3, p. 2; 53-12, p. 3). Plaintiff's claim of alleged deliberate indifference is merely a case of disagreement with the course of treatment provided, which is insufficient to establish an Eighth Amendment violation. The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id*. Thus, the undersigned suggests that the motion for summary judgment of defendants[4] involved in providing medical care to plaintiff, in obtaining medical care for plaintiff, or who plaintiff alleges should have intervened in her medical care, should be granted.

      3.    Official capacity

As to plaintiff's claims against defendants Caruso and Pramstaller in their official capacity, a plaintiff bringing an action pursuant to § 1983 may not base

---

[4] These defendants are Patricia Caruso, Charles Schmude, MD, Gloria Smith, MD, Susan Davis, Olivia Bruce, and Karen Whalen.

liability on a theory of *respondeat superior* or vicarious liability. *Moore v.*

*Michigan Dep't of Corrections*, 2007 WL 3124649, *4 (W.D. Mich. 2007), citing,

*Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 98 (1978). Rather, under *Monell*,

liability can only be found in situations where a deprivation of constitutional rights

occurs as a result of an entity's policy, custom, or practice. *Raub v. Correctional*

*Medical Services*, 2008 WL 160611, *2 (E.D. Mich. 2008), citing, *Monell*, 436

U.S. at 694. Moreover, there must be an "affirmative link between the policy and

the particular constitutional violation alleged." *Raub*, at *2, quoting, *Oklahoma*

*City v. Tuttle*, 471 U.S. 808, 823 (1985). "There must be more than merely a right

to control employees, as plaintiff must show that [the defendant] at least implicitly

authorized, approved, or knowingly acquiesced in the unconstitutional conduct of

the offending employees." *Moore*, at *4, citing, *Walton v. City of Southfield*, 995

F.2d 1331, 1340 (6th Cir. 1993).

In this case, plaintiff claims that the failure to have an on-site dentist for a

period of five months was a "policy, pattern, or practice" that violated her Eighth

Amendment rights. And thus, the supervisory defendants MDOC Director Caruso

and Dr. Pramstaller are liable for the offending policy. The undersigned suggests

that the lack of having a dentist on-site, even if it could be considered a "policy,

pattern, or practice," did not violate plaintiff's constitutional rights because she

received regular medical/dental care and essentially just disagrees with the course

of treatment received.  If there is no underlying violation of the Eighth

Amendment, then there is no vicarious liability.

      4.     Defendants Allen and Houpt

Plaintiff alleges the defendants Allen and Houpt were deliberately

indifferent to her medical needs because they "hollered" at her and refused to help

her when she asked them to help her get to Health Care.  Houpt states that

plaintiff's allegation that he said "plainly, No no, I don't have time for all this. I'm

running chow lines," is untrue.  (Dkt. 53, Ex. F).  Prisoners with health care issues

are referred to the housing unit officers to contact Health Care or have the prisoner

fill out a Health Care kite.  *Id*.  Sgt. Houpt is not a medical professional and has no

supervisory authority over Health Care.  *Id*.

Lt. Allen recalls receiving a phone call from plaintiff's father regarding

treatment for an abscessed tooth.  (Dkt. 53, Ex. G).  Lt. Allen called Health Care

and was told by an unknown nurse that plaintiff had been treated.  *Id*.  Lt. Allen

requested that perhaps plaintiff should be seen again, and was told over the phone

that she would be seen as soon as they could.  *Id*.  Soon after, plaintiff abruptly

appeared near the control center, yelling and demanding to see Health Care.  Lt.

Allen informed her that Health Care would see her again as soon as there was an

opening.  Plaintiff continued to yell and loudly indicated that she refused to leave

the area.  *Id*.  Lt. Allen advised her that if she did not leave the area, he would issue

a major out of place misconduct report.  *Id*.  He had to repeat this command again before she finally left the area.  Lt. Allen instructed C/O Henderson to write a major out of place misconduct report on Robinson. *Id*.  Plaintiff's own complaint acknowledges that Lt. Allen told her that "Health Care already knows she is abscessed" and that "she was seen that morning," corroborating his statement that he had already been in contact with Health Care about her situation.  Lt. Allen is not a medical professional, nor does he supervise the Health Care department.  *Id*.

In response, plaintiff argues that these defendants are liable because they refused to help her, violating MDOC policy by denying her access to medical care. Defendants have come forward with evidence showing that they referred plaintiff for health care and were not deliberately indifferent to her medical needs.  The undersigned suggests that plaintiff has failed to come forward with evidence that establishes a genuine issue of material fact and summary judgment should be granted in defendant Houpt's and defendant Allen's favor.  The undersigned further suggests that even if plaintiff's allegations were true, they are insufficient to establish a claim of deliberate indifference.  As to defendant Houpt, plaintiff has not offered any evidence that he had "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs" which "is essential to a finding of deliberate indifference."  As to defendant Allen, the undersigned suggests that plaintiff has not offered any evidence that he, armed with knowledge

of her particular medical condition, did anything purposely to deny or to delay "access to medical care" or to intentionally interfere "with the treatment once prescribed." *See Estelle*, 429 U.S. at 104-05.

     5.    Ethridge and Osbourne

Plaintiff alleges that Ethridge and Osborne interfered with her prescribed treatment and refused to ensure that her soft diet trays were prepared correctly. Plaintiff fails to establish deliberate indifference. According to Ethridge's records, plaintiff was on a mechanical soft diet from June 2, 2007 to June 16, 2007. (Dkt. 53, Ex. H). Medical details are processed and forwarded to Food Service by the dietician, and meals are served through the diet line. *Id*. The food selection is usually followed unless it is not readily available, in which case it is ordered from Huron Valley Men's facility. *Id*. If the food items needed for a medical detail are not available, the supervisor substitutes food of equal texture and value to make up a soft diet. (Dkt. 53, Ex. I). Plaintiff's complaint cites two examples where she claims Osborne and Ethridge violated her Eighth Amendment rights. On one occasion she claims she was told to get a tray off the regular diet line and, on another occasion, she was told that Food Service does not order special foods for people and her options were "to have her foods ground or the tray pureed." Defendants argue that being told to get her tray off the diet line was a correct instruction as that is where medical details are served. They also assert that being

told her options were to have her food ground or the tray pureed is not deliberate

indifference because that meets the definition for a "mechanical soft diet."

Defendants argue that while plaintiff seems upset that she was not given menu

items that she would have preferred, that fails to demonstrate that defendants knew

of a substantial risk of serious harm and disregarded that risk by failing to take

reasonable measures to abate it.  They assert that, at most, plaintiff makes a claim

for negligence and a simple delay in receiving a soft diet does not rise to the level

of deliberate indifference.  (Dkt. 53, citing, *Toussaint v. McCarthy*, 801 F.2d 1080,

1112 (9th Cir. 1986) ("[n]either precedent nor common sense suggests that delay in

providing a special diet rises to the level of deliberate indifference.")).

In response, plaintiff argues that, as supervisors, defendants Ethridge and

Osbourne were responsible for ensuring that her meals were prepared according to

her medical detail.  The undersigned suggests merely because plaintiff found the

idea of ground or pureed food to be "inhumane" or "disgusting," does not suggest

that these defendants failed to follow her medical detail and plaintiff offers no

evidence that suggests otherwise.  Thus, the undersigned suggests that summary

judgment should be granted in favor of defendants Ethridge and Osbourne.

    D.    Due Process

Plaintiff concedes that defendants are entitled to summary judgment on her claimed violations of her Fourteenth Amendment Due Process rights. Thus, this claim need not be addressed further.

E.     Qualified Immunity

Defendants claim to be entitled to qualified immunity regarding their actions in this case. The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992), quoting, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants bear the burden of pleading qualified immunity, but plaintiff bears the burden of showing defendants are not entitled to qualified immunity. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).

The Supreme Court had established a two-part test in order to determine whether qualified immunity was applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194 (2001). The first part of the test involved a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id.* at 201. If the first question was resolved in the affirmative then the court would decide "whether the

right was clearly established." *Id*. If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

Recently, the Supreme Court revisited their decision in *Saucier* and concluded that mandatory order of the two part test for determining if qualified immunity applied was no longer sound based on several factors including judicial economy. *Pearson v. Callahan*, — U.S. —, 129 S.Ct. 808 (2009). While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of the test. In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Without having to engage in the perhaps more complicated decision of determining whether plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established where lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th Cir. 1989) (When "the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury," the "jury becomes the final arbiter of [a] claim of

immunity."); *Bouggess v. Mattingly*, 482 F.3d 886, 888 (6th Cir. 2007).  Given the foregoing recommendations regarding the claims against the moving defendants and the conclusion that they did not violate plaintiff's constitutional rights, defendants are entitled to qualified immunity.

## IV.    RECOMMENDATION

Based on the foregoing, the undersigned suggests that defendants' motions for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Administrative Order 09-AO-042. The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 26, 2010         s/Michael Hluchaniuk
                                     Michael Hluchaniuk
                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 26, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Randall A. Juip, Michael R. Dean, Brian J. Richtarcik, and Ronald E. Wagner, and I certify that I have mailed by United States Postal Service the paper to the following non-ECF participant: Heather Robinson, # 309247, HURON VALLEY COMPLEX - WOMEN'S, 3511 Bemis Road, Ypsilanti, MI 48197.

                                   s/Tammy Hallwood
                                   Case Manager
                                   (810) 341-7887
                                   tammy_hallwood@mied.uscourts.gov